**Nos. 12-55705, 12-56250**

# In the United States Court of Appeals for the Ninth Circuit

MICKEY LEE DILTS, RAY RIOS, and DONNY DUSHAJ,
on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants*,

v.

PENSKE LOGISTICS, LLC AND PENSKE TRUCK LEASING CO., LP,
*Defendants-Appellees*.

BRANDON CAMPBELL, *et al.*,
*Plaintiffs-Appellants*,

v.

VITRAN EXPRESS, INC.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of California

## APPELLANTS' REPLY TO APPELLEES' SUPPLEMENTAL BRIEF

Deepak Gupta
Gregory A. Beck
Jonathan E. Taylor
GUPTA BECK PLLC
1625 Massachusetts Avenue, NW
Washington, DC 20036
(202) 470-3826

*Counsel for Plaintiffs-Appellants Mickey Lee Dilts, et al. and Brandon Campbell, et al.*

April 17, 2014

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

Appellants' Reply to Appellees' Supplemental Brief ................................................ 1

Conclusion .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*American Airlines, Inc. v. Wolens*,
    513 U.S. 219 (1995) ................................................................................ 3

*American Trucking Association v. FMCSA*,
    724 F.3d 243 (D.C. Cir. 2013) .............................................................. 12

*California Tow Truck Association v. City & County of San Francisco*,
    693 F.3d 847 (9th Cir. 2012) .................................................................. 9

*Californians for Safe & Competitive Dump Truck Transportation v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998) ................................................................ 8

*City of Columbus v. Ours Garage & Wrecker Service, Inc.*,
    536 U.S. 424 (2002) ............................................................................ 4, 5

*Dan's City Used Cars. v. Pelkey*,
    133 S. Ct. 1769 (2014) ................................................................... 4, 5, 6

*Difiore v. American Airlines*,
    646 F.3d 81 (1st Cir. 2011) .................................................................... 3

*FCC v. AT&T*,
    131 S. Ct. 1177 (2011) ........................................................................... 6

*Morales v. Trans World Airlines*,
    504 U.S. 374 (1992) ............................................................................... 2

*Rowe v. New Hampshire Motor Transport Association*,
    552 U.S. 364 (2008) ............................................................................... 7

*S.C. Johnson & Son, Inc. v. Transportation Corp. of America, Inc.*,
    697 F.3d 544 (7th Cir. 2012) ................................................................ 10

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ............................................................................... 9

**Statutes**

49 U.S.C. § 14501(c)(1) ................................................................................ 4, 5

49 U.S.C. § 14501(c)(2)(A) ............................................................................... 6

**APPELLANTS' REPLY TO APPELLEES' SUPPLEMENTAL BRIEF**

Appellees Penske Logistics and Vitran Express, with our consent, sought leave to file a supplemental brief in response to the amicus brief of the United States, which was filed a few weeks before oral argument. There, the United States made its position clear: "The FAAA Act does not preempt the state meal and rest break laws." U.S. Br. 10. "The California law is squarely within the states' traditional power to regulate the employment relationship and to protect worker health and safety. Moreover, it is a law of longstanding, general applicability and does not reflect any state effort to regulate motor carriers directly." *Id.* 10-11. That position—informed by the expertise of the U.S. Department of Transportation and the Federal Motor Carrier Safety Administration, their exercise of delegated authority from Congress, and their interpretation of their own regulations— deserves respect. *Id.* 30-31. It is no coincidence that the U.S. Supreme Court has adopted the position of the United States in every case involving the substantive scope of preemption under both the FAAAA and ADA.

Instead of responding to the United States, Penske and Vitran have now filed a post-argument surreply that rehashes issues already thoroughly briefed by the parties, mischaracterizes the position of the plaintiffs and the United States, and engages in wholly unsupported speculation about the effect of the state laws at issue. The supplemental brief makes four main points: (1) laws of general applicability are

subject to the FAAAA; (2) motor carriers can't comply with California's break laws without "affecting" routes and services; (3) the state laws' effect is not "merely a byproduct" of increased labor costs; and (4) caveats in the government's brief "demonstrate" that the state laws are preempted. We address each in turn.

**1.** *Laws of general applicability.* Penske and Vitran first attack an argument that neither the United States nor the plaintiffs have actually made—namely, that laws of general applicability are necessarily saved from preemption. That is not our position.

**a.** As an initial matter, Penske and Vitran are correct that, in the context of the Airline Deregulation Act (ADA), the Supreme Court has rejected the view that "the ADA imposes no constraints on laws of general applicability." *Morales v. Trans World Airlines*, 504 U.S. 374, 386 (1992). Completely exempting general laws, the Court explained, would create an "irrational loophole"—because "a particularized application of a general statute" could just as significantly impair the federal deregulatory regime—and would "ignore[] the sweep" of the ADA's "'relating to' language." *Id.*

This does not mean, however, that an application of the common law or a general law is preempted whenever it happens to significantly affect the trucking or airline industries. Cases that have found preemption under the ADA have involved state efforts to regulate carriers *as carriers*, by specifically policing the way that they

2

offer their services to the public. In *Morales*, for example, the National Association of Attorneys General (NAAG) Air Travel Industry Enforcement Guidelines were enforced through general state consumer laws but imposed "detailed standards governing the content and format of airline advertising, the awarding of premiums to regular customers (so-called 'frequent flyers'), and the payment of compensation to passengers who voluntarily yield their seats on overbooked flights." *Id.* at 379; *see also American Airlines v. Wolens*, 513 U.S. 219, 228 (1995) (ADA preempted use of general state laws to "guide and police" marketing of frequent-flier programs).

Thus, even if this were a case involving airlines rather than trucking companies, the proponents of preemption would still have to demonstrate that the state laws in question, at least in their application, regulate carriers as carriers and police the way in which they charge prices, offer services, or select routes. One ADA case cited by Penske and Vitran (at 7) provides a good example of what the law demands. There, the First Circuit held that a state tips law, as applied to the skycaps at Logan Airport, had the impermissible effect of "directly regulat[ing] how an airline service is performed and how its price is displayed to customers—*not merely how the airline behaves as an employer or proprietor*." *DeFiore v. Am. Airlines*, 646 F.3d 81, 88 (1st Cir. 2011) (emphasis added). This was so because avoiding having state law deem curbside fees a "service charge" would have required "changes in the way the service is provided or advertised," just as the state laws in *Morales* and

3

*Wolens* required actual changes in how carriers provide their services—not merely changes in the hours worked by employees.

**b.** But the text of the FAAAA is different, and the difference matters. As the Supreme Court emphasized in *Dan's City Used Cars. v. Pelkey*, 133 S. Ct. 1769, 1178 (2014), "[a]lthough § 14501(c)(1) otherwise tracks the ADA's air-carrier preemption provision, the FAAAA formulation contains one conspicuous alteration—the addition of the words 'with respect to the transportation of property.'" (citation omitted). This phrase, the Court unanimously held, "massively limits the scope of preemption" under the FAAAA. *Id.* (quoting *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 449 (2002) (Scalia, J., dissenting)).

In emphasizing this "massive limit[]" on the "scope of preemption," the Court drew upon Justice Scalia's dissent in *Ours Garage* as well as the New Hampshire Supreme Court's decision below, which made clear that "it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier *in any capacity*; the law must also concern a motor carrier's transportation of property." *Id.* (citing New Hampshire Supreme Court's opinion) (emphasis added). As Justice Scalia's opinion put it, the text limits preemption to those state laws "that *single out for special treatment* 'motor carriers of property.'" 536 U.S. at 449 (emphasis added). By contrast, states "remain free to enact and enforce general … laws" of all stripes. *Id.* The New Hampshire Supreme Court had reached the same conclusion:

4

> The inclusion in the preemption provision of the clause "with respect to the transportation of property" follows naturally from Congress's deregulatory objectives; the goal was not to indiscriminately remove businesses that happen to operate as motor carriers from the traditional oversight of states as independent sovereigns in our system, but to prevent state laws from *targeting motor carriers* as movers of property *for special treatment* as to their prices, routes, or services.

*Pelkey v. Dan's City Used Cars, Inc.*, 44 A.3d 480, 488 (2012) (emphasis added).

Thus, a state law of general applicability is subject to FAAAA preemption only if a particularized application of that law (a) regulates motor carriers in their capacity as motor carriers or (b) "singles out" motor carriers for "special treatment." California's meal-and-rest break laws do neither: They are general laws that regulate motor carriers only as employers and do not, either as promulgated or in their application here, "single out" carriers "for special treatment."[1]

Penske and Vitran resist this reading of the FAAAA, arguing that it has "no support" aside from Justice Scalia's dissent. But the unanimous Court in *Dan's City* took special care to approve of the analysis in Justice Scalia's dissent, explaining in a footnote: "Although this statement appears in the *Ours Garage* dissent, nothing in

---

[1] Judge Kozinski suggested at argument that the break laws might not be properly regarded as general because they are enforced through industry-wide wage orders. But Wage Order 9, at issue here, covers "any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another whether by rail, highway, air, or water, and all operations and services in connection therewith." *See* https://www.dir.ca.gov/IWC/WageOrders2005/IWCArticle9.html; *see also* http://www.dir.ca.gov/dlse/WhichIWCorderclassifications.pdf (state pamphlet itemizing, at page 23, the enormous breadth of Wage Order 9's coverage).

5

the Court's opinion in that case is in any way inconsistent with the dissent's characterization of § 14501(c)(1)." *Dan's City*, 133 S. Ct. at 1779. And if the Court did not approve of Justice Scalia's textual analysis, as Penske and Vitran contend, then what exactly is the "massive limit" on FAAAA preemption and how does it give meaning to the different wording of the statutes? And why did the Court fail to indicate its disagreement with the central point of Justice Scalia's and the New Hampshire Supreme Court's analysis while at the same time adopting their phrasing and citing them with approval? (If the Court meant only that the application of the law must involve transportation, there would have been no reason to call this a "massive limit[]" or borrow Justice Scalia's phrasing).

Moreover, the preemption rule's "with respect to the transportation or property" qualifier must be read *in pari materia* with the safety exception's "with respect to motor vehicles" qualifier, 49 U.S.C. §14501(c)(2)(A). *See FCC v. AT&T*, 131 S. Ct. 1177, 1185 (2011) ("[I]dentical words and phrases within the same statute should normally be given the same meaning.") (quoting *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 232 (2007)). In its opening brief, Penske emphasized that the safety exception's qualifier means that a state law must "*very specifically* address[] the regulation of motor vehicles"—a test the California break law fails, in Penske's view, because its applies to any "generic 'employer' and its employees." Penske Br. 49 (citing cases adopting this reading); *see also* Vitran Br.

6

49-51 (break law "merely reflects the general purpose of promoting the health and welfare of all workers in the industry, not just drivers of motor vehicles"). If that reading is correct—if the phrase "with respect to" in the FAAAA demands that the state law must "very specifically address" motor vehicles, then there is no sensible reason why it should not similarly limit the general rule of preemption to state laws that "target motor carriers" or "single out" motor carriers "for special treatment." *Ours Garage*, 536 U.S. at 449 (2002) (Scalia, J., dissenting).

**c.** In any event, *Dan's City*'s distinction between general and carrier-specific laws can also be found in the Court's only other FAAAA decision, *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364 (2008). There, the Court held the Maine law at issue preempted because it specifically regulated delivery services—in the Court's words, it "focus[ed] on trucking and other motor carrier services." *Id*. In other words, "the state law [was] not general"; it was not state regulation "that broadly prohibits certain forms of conduct and affects, say, truckdrivers" only incidentally. *Id.* at 375-76. Maine's law was preempted because it "aim[ed] directly at the carriage of goods" and "require[ed] motor carrier operators to perform certain services, thereby limiting their ability to provide incompatible alternative services." *Id.* at 376. But the Court was careful to stress that Maine could likely achieve its legitimate public-health objectives by enacting "laws of general (non-carrier specific) applicability." *Id.* at 376-77.

7

**2. Speculation about the break laws' effects.** Penske and Vitran next argue that motor carriers can't comply with California's break laws without "affecting" routes and services. Br. 8. As in the opening brief, their argument (at 10-16) consists largely of speculation, untethered to the record, about how the state laws might affect carriers' operations. There are two principal problems with this discussion.

*First*, as became clear at oral argument in a colloquy between Judge Graber and Vitran's counsel, the case for preemption here is ultimately a complaint about increased labor costs—the very argument that this Court rejected in *Californians for Safe & Competitive Dump Truck Transporation v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998). At the end of the day, neither Penske nor Vitran deny that they could structure their operations so as to provide their preferred level of service and routes with adequate staffing, though it might end up costing more. *See* U.S. Br. 21 ("Although the state law might in some circumstances make it more expensive to adhere to a preferred route, it does not compel a carrier to abandon its route choice.").

*Second*, as Judge Zouhary pointed out at oral argument, these cases both present a remarkably "thin record" on which to decide the preemption defense. The supplemental brief speculates, for example, that the break laws will "necessarily limit carriers to a smaller set of possible routes by compelling carriers

8

to use only routes that are amenable to scheduled breaks or ones that can be covered by a driver employed for only six hours a day." Supp. Br. 15. But what is the basis for that prediction? The brief's discussion of these effects (at 10-16) contains no citations to the record in either case, or to any other authority that might allow the Court to assess these predictions by Penske and Vitran's lawyers. Nor have the carriers presented this Court with even the most basic facts that could inform its analysis—such as how long the short-haul delivery drivers in these cases spend driving each day; the average length of their routes, in terms of both hours and miles; the number of rest and refueling locations they encounter; the number of stops they make; or the amount of time they spend at warehouses and other locations where they may easily take their breaks.

The inadequacy of this speculation is especially problematic given the presumption against preemption. In cases involving FAAAA preemption, both this Court and the Supreme Court have made clear that "[p]reemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *California Tow Truck Ass'n v. City & Cnty. of San Francisco*, 693 F.3d 847, 858 (9th Cir. 2012) (quoting *Ours Garage*, 536 U.S. at 429); *see also* U.S. Br. 17. Preemption, moreover, is "demanding defense," on which the proponent bears the burden; it cannot be established "absent clear evidence." *Wyeth v. Levine*, 555 U.S.

9

555, 571 (2009). A longstanding state law within a field traditionally occupied by the states should not be cast aside on the basis of such open-ended speculation.

### 3. Employers' labor "inputs" vs. carriers' service "outputs."

Apparently adopting Judge Wood's analysis for the Seventh Circuit in *S.C. Johnson & Sons v. Transportation Corp. of America, Inc.*, 697 F.3d 544, 558 (7th Cir. 2012), Penske and Vitran correctly acknowledge that "[t]he FAAAA does not preempt" "background laws" that affect the cost of labor inputs and, in turn, the price of services. Supp. Br. 17. This acknowledgment is in substantial tension with the increased-costs theory advanced at oral argument and discussed above. It is also directly contrary to the increased-costs argument made at length by the U.S. Chamber of Commerce. *See* Chamber Amicus Br. 4-10.

Pivoting from that acknowledgment, Penske and Vitran claim that the California break laws are different from such background laws because they "directly impact carriers' outputs—the actual services they provide to their customers and the routes they utilize in doing so." Supp. Br. 18. That assertion, repeated throughout the opening briefs and the supplemental brief, simply does not bear scrutiny. As the United States explained, the state law's application to motor carriers "turns purely on the number of hours an employee is on duty, irrespective of the carrier's prices, routes, or services" and "is not intended to regulate motor carriers in any capacity other than their general role as employer." U.S. Br. 16.

10

Motor carriers in California are free to set their prices, routes, or services—they just might need to pay more to comply with the law. As the government's brief explains, "the state in no way applies coercive regulatory power to dictate changes in routes or services." U.S. Br. 21. That should be the end of the matter.

**4. The United States has not "conceded" preemption.** Finally, Penske and Vitran imaginatively read a single caveat in the government's brief—its statement that the preemption analysis "might be" different "if California applied the law to drivers who cross state lines," U.S. Br. 24—as a "concession" or "admission" of preemption that undercuts everything else in the brief. Supp. Br. 21-22.

For starters, the government's statement that the outcome "might be" different on different facts cannot fairly be characterized as a "concession" or "admission" of anything, much less a concession at war with the rest of the government's brief. When the United States is invited to file a brief in a federal court of appeals, it is aware that its brief will be given significant weight and that the filing of the brief itself has legal significance; it may be relied upon in other cases and taken as guidance by the regulated industry and others. For those reasons, it is perfectly appropriate for the government to say no more than is necessary to help the appellate court decide the case before it, and to be circumspect about future cases and scenarios not before the court.

11

And as counsel for the United States made clear at oral argument, the caveat on which Penske and Vitran rely was intended to address only to the issue of *implied conflict preemption* under the federal Hours-of-Service regulations—an issue that was raised in the district court but abandoned on appeal. This is because the D.C. Circuit invalidated the application of federal break rules to short-haul drivers, *see American Trucking Ass'n v. FMCSA*, 724 F.3d 243 (D.C. Cir. 2013), and the agency amended its regulations to conform to that decision. U.S. Br. 29. Indeed, in response to a question from Judge Zouhary, counsel for the United States explained the government's position that the preemption analysis, only "*in terms of conflict preemption*, might be different" if this case involved long-haul truckers, but that the interstate or intrastate nature of the drivers does *not* affect express preemption under the FAAAA. Oral Arg. Recording, *available at* http://www.ca9.uscourts.gov/media/view.php?pk_id=0000012450 (counsel explaining that "this case does not present those questions" because "there is simply is no federal regulatory requirement applicable to these drivers."); *see also* U.S. Br. 29 ("There is no current federal break requirement with respect to short-haul drivers, and the agency advises that it has no current plan to impose one."). Thus, even if one were to interpret the government's statement as a concession of some kind, it would have no bearing on the single question of statutory preemption presented in this appeal.

## CONCLUSION

For the reasons stated above and in our opening and reply briefs, the judgment below should be reversed.

Respectfully submitted,

*/s/ Deepak Gupta*
_____
Deepak Gupta
Gregory A. Beck
Jonathan E. Taylor
GUPTA BECK PLLC
1625 Massachusetts Avenue, NW, Suite 500
Washington, DC 20036

*Counsel for Plaintiffs-Appellants Mickey Lee Dilts, et al. and Brandon Campbell, et al.*

April 17, 2014

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)**

I hereby certify that my word processing program, Microsoft Word, counted 2,959 words in the foregoing brief, exclusive of the portions excluded by Rule 32(a)(7)(B)(iii).

*/s/ Deepak Gupta*
_____
Deepak Gupta

April 17, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2014, I electronically filed the Appellants' Reply to Appellee' Supplemental Brief with the Clerk of the Court of the U.S. Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the Appellate CM/ECF system.

*/s/ Deepak Gupta*
_____
Deepak Gupta